Filed 1/30/19

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| J.S. BAWA, | ) | No. BV 032618 |
| | ) | |
| Plaintiff and Appellant, | ) | Van Nuys Trial Court |
| | ) | |
| v. | ) | No. 17U06953 |
| | ) | |
| DAVID TERHUNE, | ) | |
| | ) | |
| Defendant and Respondent. | ) | **OPINION** |
| | ) | |

APPEAL from a judgment of the Superior Court of Los Angeles County,

Michael B. Harwin, Judge.  Reversed and remanded.

Law Office of Allen R. King and Allen R. King, for Plaintiff and Appellant J.S. Bawa.

Eviction Defense Network, Claudia Medina, for Defendant and Respondent

David Terhune.

\*          \*          \*

We hold that, when a landlord returns a tenant's rent check without cashing it based on a de minimis shortage in the agreed-upon rent, a tenant can assert the landlord's bad faith in rejecting the payment as a defense to an unlawful detainer action. We reject appellant's argument that when, as in the present case, a check is returned because it is one cent short and an eviction notice is served days later, the tenant must re-tender payment following service of the notice and has no defense to the action after failure to re-tender.

The jury in the unlawful detainer action brought by plaintiff and appellant J.S. Bawa determined defendant and respondent David Terhune "Did [not] fail to make at least one rental payment to [plaintiff] as required by the rental agreement," and the court entered judgment for defendant. As the tender of the check was rejected, defendant failed to pay the rent, and thus the judgment was not supported by the evidence. Because the jury determined (improperly) that defendant paid the rent, it did not address whether there was a legitimate defense to the unlawful detainer cause of action. We reverse and remand for a new trial.

## BACKGROUND

Plaintiff filed the unlawful detainer case against defendant based on a failure to comply with a June 12, 2017 three-day notice to pay rent or quit. Plaintiff alleged the rental unit was subject to the City of Los Angeles Rent Stabilization Ordinance (LARSO) (L.A. Mun. Code, § 151.00 et seq.), and the action was warranted based on failure to pay rent (see L.A. Mun. Code, § 151.09, subd. A. [evictions under LARSO must be supported by "good cause"]). The attached three-day notice stated there was "unpaid and delinquent rent" of $507.61 for June 2017, consisting of the base $504 rent and a $3.61 City of Los Angeles Systematic Code Enforcement Program (SCEP) fee (L.A. Mun. Code, § 161.352). Plaintiff stated that, unless defendant complied with the notice, he "does hereby elect to declare a forfeiture of the subject lease . . . and will institute legal proceedings for the unlawful detainer . . . to recover possession of the premises . . . ."

Defendant filed an answer, generally denying the allegations in the complaint, including that he was in default in paying the rent. Defendant also asserted affirmative defenses, including that plaintiff "[breached the] warranty of habitability," "filed this lawsuit to retaliate

against tenant for . . . asserting tenant's legal rights," and "violated the [i]mplied [c]ovenant of [g]ood [f]aith and [f]air [d]ealing." Defendant additionally asserted his "[b]reach was not material and thus will not support a forfeiture."

At the ensuing jury trial, Tariq Saeed, plaintiff's resident manager, testified defendant was obligated to pay $507.61 at the beginning of each month. In early June 2017, Saeed received a check drawn on defendant's Wells Fargo bank account in the amount of $507.60. On June 7, Saeed mailed back the check, uncashed, with a letter stating "we are returning your check . . . since the rent amount is incorrect. The correct amount of your rent portion including the SCEP fees is currently $507.61." Saeed served the three-day notice to pay rent or quit on defendant on June 12 by posting the notice on defendant's apartment door and mailing a copy to him on June 13. After expiration of the notice period, defendant sent plaintiff two checks, one dated June 20, 2017, in the amount of $507.61 and another for $519.86, dated June 25, 2017. The checks were not deposited into plaintiff's account, nor were they negotiated. Defendant's testimony confirmed none of his checks for June were paid by his bank.

The jury was instructed that, for plaintiff to prevail, it had to find defendant failed to pay the rent, a three-day notice was served on defendant, and defendant failed to comply with the notice. The jury was further instructed on defendant's affirmative defenses, including habitability and retaliation, but not "good faith and fair dealing" and that defendant's breach was immaterial.

The first question in the special verdict form asked, "Did [defendant] fail to make at least one rental payment to [plaintiff] as required by the rental agreement?" The jury answered "No." Per the instructions on the form, the jury did not answer any further verdict questions, including whether plaintiff provided defendant with a valid three-day notice, whether the notice stated the correct amount owed, and "Did J.S. Bawa waive the right to reject David Terhune's tender of the rent check of $507.60?"

The court on November 3, 2017, entered judgment in defendant's favor in accord with the jury's verdict. Plaintiff filed a motion for a new trial, arguing the verdict was unsupported by the evidence, and on January 4, 2018, the court denied the motion, determining that "the jury found sufficient evidence that [plaintiff] prevented payment, as reflected in the verdict

3

rendered." Plaintiff filed a timely notice of appeal from the judgment.

## DISCUSSION

This case involves interpretation of legal principles and statutes and the application of law to facts that are not in dispute. We therefore exercise de novo review as to whether judgment was properly entered. (*Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1119; *Canales v. Wells Fargo Bank, N.A.* (2018) 23 Cal.App.5th 1262, 1269.)

<u>An Eviction Notice Requires a Default</u>

A landlord must serve a tenant with a valid three-day notice in order to prevail in an unlawful detainer action. (Code Civ. Proc., § 1161. subd. (2); *Bevill v. Zoura* (1994) 27 Cal.App.4th 694, 697.) "'It has long been recognized that the unlawful detainer statutes are to be strictly construed and that relief not statutorily authorized may not be given due to the summary nature of the proceedings. [Citation.] The statutory requirements in such proceedings "'must be followed strictly . . . .'" [Citations.] 'The remedy of unlawful detainer is a summary proceeding to determine the right to possession of real property. Since it is purely statutory in nature, it is essential that a party seeking the remedy bring himself clearly within the statute.' [Citation.]" (*Dr. Leevil, LLC v. Westlake Health Care Center* (Dec. 17, 2018, No. S241324) __ Cal.5th __ [2018 Cal. Lexis 9546, *7-*8].)

A tenant is guilty of an unlawful detainer and may be properly evicted only when the landlord proves the tenant falls within at least one of the enumerated circumstances. In the case of failure to pay rent, the elements of the action are set forth in Code of Civil Procedure section 1161, subdivision (2). The statute provides, in relevant part, that the tenant may be evicted "When he or she continues in possession, . . . without the permission of his or her landlord, . . . *after default in the payment of rent*, pursuant to the lease or agreement under which the property is held, and three days' notice, in writing, requiring its payment, stating the amount which is due, . . . shall have been served upon him or her . . . ." (Italics added.)

Under the clear words of the statute, a three-day notice may only be served, "after default in the payment of rent." (See *United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1089-1090 [statutory interpretation begins with examining the words used in a statute].) The word "default" is not defined by the statute. But, given the context in

4

which it is used, it is apparent the common definition, "failure to do something required by duty or law," was intended.  (< http://www.merriam-webster.com/dictionary/default > [as of January 30, 2019]; accord, http://www.oxforddictionaries.com/definition/english/default > [as of January 30, 2019]; see *People v. Whitlock* (2003) 113 Cal.App.4th 456, 462 ["To ascertain the common meaning of a word, 'a court typically looks to dictionaries'"].)  A tenant has a duty to timely pay rent, and when the tenant fails to do so, the tenant defaults in the duty.

Effect of Payment by Check

When, as here, the form of payment used is an uncertified check (see Cal. U. Com. Code, § 3104, subd. (f) [personal check is an uncertified check]), California Uniform Commercial Code section 3310, subdivision (b), provides, in relevant part, "Unless otherwise agreed . . . , if . . . an uncertified check is taken for an obligation, the obligation is *suspended* to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken, and the following rules apply: [¶] (1) . . . suspension of the obligation continues until dishonor of the check or until it is paid or certified.  Payment or certification of the check results in discharge of the obligation to the extent of the amount of the check."  (Italics added.)

While a debt or obligation is "suspended," a debtor is not in default in the paying of the obligation.  ("Suspended" means "to hold in an undetermined or undecided state awaiting further information" < http://www.merriam-webster.com/dictionary/suspended > [as of January 30, 2019].)  Once the tendered check is negotiated by the payee and honored by the bank, the obligation is discharged; if it is dishonored, the obligation is revived.  (Cal. U. Com. Code, § 3310, subd. (b)(1).)

The language in California Uniform Commercial Code section 3310 — "[i]f an uncertified check is taken for an obligation" — "refers to a situation in which the debtor has delivered an instrument with the intention that it constitute conditional payment for the underlying obligation and the creditor has accepted it as conditional payment for the underlying obligation."  (*Canal-Randolph Anaheim, Inc. v. Wilkoski* (1978) 78 Cal.App.3d 477, 490 [discussing similarly worded predecessor statute, former Cal. U. Com. Code, § 3802].)  Thus, in order for California Uniform Commercial Code section 3310 to apply to suspend an

5

obligation, there must be both a delivery by the debtor and an acceptance by the creditor, which then results in "'a surrender of the right to sue on the obligation until the instrument is due, but if the instrument is not paid on due presentment the right to sue on the obligation is "revived."'" (*Id.* at p. 487.) Under the above principles, if a landlord does not accept a check, the duty to pay rent is not suspended, and thus the tenant is in default in paying rent.

The Duty to Re-tender Payment

Plaintiff argues "[a] refused tender prior to service of a notice to pay rent or quit is not a defense to an unlawful detainer based on a notice demanding the rent that had previously been refused." We address this issue to provide guidance to the trial court and the parties upon remand.

Plaintiff relies on *Webb v. Jones* (1927) 88 Cal.App. 20, 29 (*Webb*) and *Occidental Real Estate Co. v. Gantner & Mattern* (1908) 7 Cal.App. 727, 731-732 (*Occidental*) to argue that a landlord can refuse valid tender of rent, serve a three-day notice to pay rent demanding unpaid rent, and then obtain an unlawful detainer judgment when the tenant fails to comply with the notice demanding the previously rejected rent. The opinions do not stand for such a proposition.

In *Webb*, the renter "tendered the rents for the months of March to December, 1922, at $500 per month by means of checks mailed to plaintiff, which were refused by her, but he did not attempt to extinguish the obligation by depositing the amount thereof to the credit of plaintiff and by giving the notice of the deposits as provided in section 1500 of the Civil Code." (*Webb*, *supra*, 88 Cal.App. at p. 29.) At the time *Webb* was decided, Civil Code section 1500 provided, "An obligation for the payment of money is extinguished by a due offer of payment, if the amount is immediately deposited in the name of the creditor, with some bank within this state, of good repute, and notice thereof is given to the creditor." *Webb* held the debt was not extinguished by the tender of the checks because "[c]ontinuous readiness to pay after the tender was not shown," as the renter had "used the money for other purposes and was not able to pay the back rent" after service of the three-day notice. (*Ibid.*)

In *Occidental*, each month the renter sent a check for $100 for 10 months, but each time the landlord returned the check. (*Occidental*, *supra*, 7 Cal.App. at p. 729.) The landlord

6

subsequently served a three-day notice demanding $1,000 in rent, and the renter failed to pay within three days.  (*Id.* at pp. 729-730.)  The Court of Appeal stated, "the only contention of defendant seems to be that because he had each month tendered the rent for that month [an unlawful detainer] action will not lie."  (*Id.* at p. 731.)  The court rejected the contention, stating, "But the tender each month did not pay the rent."  (*Ibid.*)  The court pointed out that the renter could have extinguished the rent obligation by depositing the rent in a bank account for the landlord as provided in Civil Code section 1500, but did not do so.  (*Ibid.*)

The aspect of *Webb* and *Occidental* which plaintiff seizes upon is the tenant's failure to re-tender payment after service of the three-day notice.  Plaintiff relies on the following quote from *Occidental*, "The fact that defendant each month tendered . . . rent did not entitle him to retain possession of the premises after plaintiff served him with the written notice authorized by subdivision 2 of section 1161, Code of Civil Procedure.  'Notwithstanding the refusal of a valid tender, if the creditor subsequently demands payment, and the debtor fails to pay, the tender has not been kept good, and the debtor loses the benefit of the tender.'  [Citation.]"  (*Occidental*, *supra*, 7 Cal.App. at pp. 731-732.)  But, the issue decided in *Occidental* and *Webb* was whether tender by itself extinguished the debt, barring the unlawful detainer judgment.

We view these cases as pertaining to the manner in which a debt can be extinguished under Civil Code section 1500, i.e., through the immediate deposit of money in the creditor's name, when tender is refused.  In *Webb* and *Occidental,* the legitimacy of the reason the landlord rejected tender was not discussed.  The opinions thus do not control the case *sub judice*.  (See *Johnson v. Bradley* (1992) 4 Cal.4th 389, 415 [opinions are not authority for propositions they do not consider].)

The Defense of a Landlord's Unjustified Refusal to Accept Rent

Because an unlawful detainer involves forfeiture of the right to remain in a home, not only must the eviction statutes be construed with exactitude, but the right to evict must also be governed by equitable principles.  (See *Strom v. Union Oil Co*. (1948) 88 Cal.App.2d 78, 82 (*Strom*).)  Forfeitures are disfavored by courts, and contractual provisions "'must be strictly interpreted against the party for whose benefit it is created.'"  (*Boston LLC v. Juarez* (2016) 245 Cal.App.4th 75, 86-87 (*Boston*), quoting Civ. Code, § 1442.)

"[A] '"trivial" or "de minimis" breach [of a rental obligation] is not sufficient ground for termination . . . .' [Citation.]" (*Boston*, *supra*, 245 Cal.App.4th at p. 83; accord, Civ. Code, § 3533 ["[t]he law disregards trifles"]; *Medico-Dental Bldg. Co. v. Horton & Converse* (1942) 21 Cal.2d 411, 433 ["a breach of contractual right in a trivial or inappreciable respect will not justify rescission of the agreement by the party entitled to the benefit in question"].) "Permitting landlords . . . with superior bargaining power to forfeit leases based on minor or trivial breaches would allow them to strategically circumvent LARSO's 'good cause' eviction requirements and disguise pretext evictions under the cloak of contract provisions." (*Boston*, *supra*, 245 Cal.App.4th at p. 85.)

"'It is quite true that the payment of the rent in accordance with the terms of the lease is one of the essential obligations of the lessee, and the failure of the lessee to properly discharge this obligation is a legal cause for dissolving the lease. But this presupposes that the lessor is desirous and willing that the lessee should pay his rent promptly, and will facilitate and not hinder him in doing so; that the lessor is not endeavoring merely to entrap his lessee into a technical breach of the lease.' [Citation.]" (*Strom*, *supra*, 88 Cal.App.2d at p. 81.)

Thus, when a landlord refuses to accept rent that is one penny short of the required amount, without any legitimate intent other than to manufacture a default in order to evict a tenant, a tenant may assert the landlord's bad faith as an unlawful detainer defense. (*Strom*, *supra*, 88 Cal.App.2d. at pp. 82-83; see *Nork v. Pacific Coast Medical Enterprises, Inc.* (1977) 73 Cal.App.3d 410, 414 ["equitable defenses which can be used in an unlawful detainer action relate to improper acts on the part of the landlord such as: refusal to accept timely payment of rent"]; *North 7th Street Associates v. Constante* (2001) 92 Cal.App.4th Supp. 9, 10-11 ["[d]efenses available in unlawful detainer are limited to those which, if proven, would maintain the defendant's right to possession," including "refusal of the landlord to accept tender of rent"]; *Randal v. Tatum* (1893) 98 Cal. 390, 396 [a landlord's refusal to accept a tenant's timely tender of rent is affirmative defense to unlawful detainer based notice to pay or quit].) "Frustration of purpose [of a lease] is [also] a legitimate defense to an unlawful detainer action which, if established, results in the tenant's retention of the premises. [Citations.]" (*Underwood v. Corsino* (2005) 133 Cal.App.4th 132, 135-136.)

Even though a tenant defaults in the payment of rent, equity will not countenance forfeiture of a lease when the default is both de minimis and the product of the landlord's unreasonable refusal to accept rent.

The Judgment in the Present Appeal

The jury found defendant did not fail to make "at least one rental payment . . . as required by the rental agreement." The finding was not supported by substantial evidence because there was a tender of payment but no acceptance. (See *Moran v. Foster Wheeler Energy Corp.* (2016) 246 Cal.App.4th 500, 518 [we review the record in the light most favorable to the prevailing party looking for substantial evidence, but "substantial evidence is not 'synonymous with "any" evidence,'" it must possess """"ponderable legal significance""""].) As previously discussed, when a noncertified check is taken for an obligation, a debt is only suspended pending payment on or dishonor of the check (Cal. U. Com. Code, § 3310, subd. (b)), and here it was undisputed plaintiff's agent did not take the check, much less negotiate it.

However, as the jury failed to determine whether plaintiff proved all the elements of the unlawful detainer action, plaintiff is not entitled to have the court enter judgment in his favor on remand. Both plaintiff and defendant must be afforded the opportunity to litigate the issues in a new trial.

DISPOSITION

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion. Each side to recover their own costs on appeal. (Cal. Rules of Court, rule 8.891(a)(4).)

_____
Ricciardulli, J.

We concur:

_____    _____
Kumar, Acting P. J.       Richardson, J.